UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kim Irene Thompson,
     Plaintiff

     v.                             Civil No. 06-cv-117-SM
                                      Opinion No. 2007 DNH 119
Liberty Life Assurance
Company of Boston,
     Defendant

**O R D E R**

Kim Thompson brings this action seeking benefits under her former employer's long-term disability plan (the "Plan"). See generally Employee Retirement Income Security Act, 29 U.S.C. § 1132(a) ("ERISA"). Defendant, Liberty Life Assurance Company of Boston ("Liberty"), acts as both the insurer underwriting benefits provided by the Plan and Plan Administrator. In its capacity as Plan Administrator, Liberty determined that although Thompson plainly suffers from a fairly serious medical condition, she did not, as of September of 2004, meet the eligibility requirements for long-term disability benefits. Of course, that denial of Thompson's application for benefits meant that Liberty (in its capacity as insurer of the Plan) was not obligated to make payments to her.

Pending before the court are the parties' cross-motions for judgment on the administrative record. The court is constrained to conclude that because judicial review of Liberty's decision to deny Thompson long-term disability benefits is narrow, and the decision cannot be said to be "arbitrary and capricious," Liberty is entitled to judgment as a matter of law.

## Background

Pursuant to this court's Local Rule 9.4(b), the parties have submitted a Joint Statement of Material Facts (document no. 15), describing Thompson's recent medical history, including her numerous visits to several doctors, nurses, and physical therapists, the non-surgical treatment she has received, and the fairly substantial number of medications she has been prescribed. Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

Cases brought under ERISA require the district court to employ a somewhat modified version of the standard of review typically applied to motions for summary judgment. Rather than take evidence or consider affidavits and deposition testimony, the court is called upon to "evaluate the reasonableness of an

administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). Consequently, this court sits more as an "appellate tribunal than as a trial court" in determining whether a plan administrator's benefits eligibility decision is sustainable. Id. This means that "summary judgment is simply a vehicle for deciding the issue," and "the non-moving party is not entitled to the usual inferences in its favor." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) (citation omitted).

**Discussion**

I.   Plaintiff's Burden of Proof under ERISA.

Because the parties agree that the plan vests the Plan Administrator (i.e., Liberty) with discretionary authority to make benefits eligibility determinations, the court must evaluate Liberty's denial of Thompson's application for benefits under the deferential "arbitrary and capricious" standard of review. See generally Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). But, says Thompson, because Liberty is both the Plan Administrator and the entity responsible for paying benefits, its resolution of her application for benefits was, at least potentially, clouded by a conflict of interest. Given that

3

circumstance, Thompson asks the court to apply a "heightened" arbitrary and capricious standard when reviewing Liberty's decision.  See Plaintiff's memorandum (document no. 18-2) at 12 (citing Sanderson v. Continental Casualty Corp., 279 F. Supp. 2d 466, 472 (D. Del. 2003)).  The court necessarily disagrees.

To be sure, numerous courts, including this one, have questioned the propriety, and even fairness, of the "arbitrary and capricious" standard of review in cases where the same entity that makes eligibility determinations also funds benefit payments.  Two judges on a split panel of the First Circuit Court of Appeals recently suggested that the full court, sitting en banc, ought to revisit the standard of review applicable to ERISA cases in which the plan administrator determines benefits eligibility and also funds benefit payments.  Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 31 (1st Cir. 2007) (Judge Lipez wrote: "I think it is time to reexamine the standard of review issue in an en banc proceeding.  Although Judge Howard dissents from the judgment agreed to by Judge Selya and myself, he agrees with me, as indicated in his dissent, that we should reexamine the standard of review issue.").  A petition for en banc review is apparently pending in Denmark.  But, unless and until the court of appeals (or the Supreme Court) changes the

4

governing standard of review, this court is obliged to apply the
law as it currently exists.

Under the current law of this circuit, merely pointing out
that a plan administrator is also the entity that pays any
benefits found due under the plan is insufficient to warrant
departure from the applicable arbitrary and capricious standard
of review.  See, e.g., Wright v. R.R. Donnelley & Sons Co. Group
Benefits Plan, 402 F.3d 67, 75 (1st Cir. 2005) ("[T]he fact that
the plan administrator will have to pay the plaintiff's claim out
of its own assets does not change the arbitrary and capricious
standard of review.") (citation and internal punctuation
omitted); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184
(1st Cir. 1998) (same).  To warrant subjecting a plan
administrator's benefits eligibility determination to a stricter
standard of review, a plaintiff must point to some evidence
suggesting that its decision was actually influenced by improper
factors.

Here, beyond pointing out the potential conflict of interest
facing Liberty, Thompson has failed to identify anything in the
record suggesting that its benefits eligibility determination was
influenced by improper factors.  Consequently, this court is

obligated to measure the appropriateness of Liberty's actions against the highly deferential "arbitrary and capricious" standard of review.

Under the arbitrary and capricious standard of review, this court must uphold a plan administrator's benefits eligibility determination if its decision was reasoned and supported by substantial evidence.  And, as the court of appeals has repeatedly noted,

> Evidence is substantial when it is reasonably sufficient to support a conclusion, and contrary evidence does not make the decision unreasonable. While arbitrary and capricious review is not the equivalent of a rubber stamp, a court is not to substitute its judgment for that of the decisionmaker.

Denmark, 481 F.3d at 33 (citations and internal punctuation omitted).  See also Doyle, 144 F.3d at 184 ("Substantial evidence . . . means evidence reasonably sufficient to support a conclusion.  Sufficiency, of course, does not disappear merely by reason of contradictory evidence.").  Necessarily, then, whether the court would award benefits to Thompson under the Plan is completely immaterial.  The sole issue presented is whether there is "reasonably sufficient" evidence in the record to support Liberty's denial of benefits.  There is.

6

II.  Evidence Supportive of The Parties' Respective Positions

Thompson's last worked for her employer in March of 2004, after which she began collecting short-term disability benefits under the Plan for a period of six months.  The question before the court is whether Liberty improperly denied Thompson's application for long-term disability benefits, which would have begun in September of 2004.

As is frequently the situation in ERISA cases arising out of contested benefits eligibility determinations, the record contains evidence supportive of both parties' positions.  For her part, Thompson relies on her lengthy medical history and well-documented diagnoses of multi-level disc degeneration.  The most compelling support for her position is an opinion issued by her treating physician, Dr. Thomas Rock (an orthopedic surgeon).  Dr. Rock opined that Thompson suffers from a permanent impairment and that, as of September of 2004, she was unable to work as a result of severe pain caused by her disc disease.  His opinion is both well-supported and well-reasoned, and it is based upon a fairly lengthy period of observation and treatment.

Additionally, Thompson points to the opinion of another of her treating physicians – Dr. Peter Thompson – who, in the fall

7

of 2004, opined that she had "significant degenerative disc
disease with distal extremity pain." Admin. Rec. at 435. She
also relies on the opinion of Dr. Christopher Burns who, in
November of 2004, observed that Thompson had "degenerative disc
disease in the lumbar spine that has been quite debilitating."
Admin. Rec. at 201. Also supportive of her position is the
opinion of physician's assistant Timothy O'Brien, who, in July of
2004, opined that Thompson could not work and was unable to bend,
kneel, squat, climb, sit, reach, drive, or do any fine motor
activities. Admin. Rec. at 434.

Finally, Thompson points to various records relating to her
mental health counseling, which she says demonstrate the
psychological toll her disability has taken on her and document
the numerous medications she is taking as a result. Importantly,
however, none of those records seem to suggest (nor does Thompson
argue) that any of her counselors viewed her mental condition as
so severe as to be disabling.

In support of its view that its decision to deny Thompson
benefits was neither arbitrary nor capricious, Liberty points out
that Dr. Uri Ahn – another of Thompson's examining physicians –
acknowledged her painful back condition, but did not consider her

to be disabled.  Instead, Dr. Ahn opined that Thompson could work eight hours a day, five days a week, and could frequently lift/carry 10 pounds, stand, walk, sit, reach, drive, and perform fine motor activities.  He also opined that she could occasionally bend, kneel, squat, and climb.  Admin. Rec. at 411. Two months later, in June of 2004, Ernest Roy, a physical therapist, performed a functional capacity evaluation of Thompson (frequently referenced in the record as an "FCE").  Mr. Roy concluded that Thompson could work an eight-hour day and perform at a medium duty level.  He also expressed the opinion that Thompson showed "significant performance inconsistencies with regard to her lifting capacity test," which he suggested meant that Thompson's test results were not representative of her actual abilities.  Admin. Rec. at 137.

Liberty also points out that, in the summer of 2004, Thompson was examined by Dr. Anthony Parisi, an orthopedic surgeon.  Among other things, Dr. Parisi opined that Thompson suffers from "low-grade multilevel disc degeneration."  But, said Parisi, Thompson's condition "does not usually cause significant impairment in a 44-year-old female."  Admin. Rec. at 550.  He concluded that Thompson's "symptoms appear[ed] to be in excess of the physical and diagnostic findings."  Dr. Parisi also noted

that Thompson's performance on the physical capacities examination performed by Mr. Roy is "suggestive of symptom magnification."  Id.

Subsequently, in late August of 2004, Liberty hired a private investigator to observe Thompson for a period of 48 hours.  That investigator reported that he saw Thompson at a fitness center, walking in a smooth and erect manner and performing sit-ups without any apparent discomfort.  He also observed Thompson carrying her gym bag and groceries, without any apparent difficulty.  Admin. Rec. at 525.  Finally, the investigator noted that Thompson entered and exited her sport utility vehicle (which has a fairly high threshold) without difficulty or discomfort.  Id. at 527.

Later, in November of 2004, Dr. Parisi completed another report in which he opined that "the medical records only support the diagnosis of milder degenerative disc disease, as would not be unexpected in a person of 45 years of age."  Admin. Rec. 456. He also noted that Thompson's "symptoms appear in excess of the physical and diagnostic findings."  Id. at 457.  And, in the end, Dr. Parisi concluded that the "diagnosis of significant disc disease is not well-supported by the medical record.  I do not

10

find evidence of significant pathology that would preclude the insured from sedentary to light level of activity." Id.

Finally, in January of 2005, Liberty sought the opinion of Dr. C. David Bomar, a consulting physician who specializes in orthopedic surgery.  After reviewing Thompson's medical records, Dr. Bomar concluded that: (1) those records do not support the conclusion that Thompson is unable to perform light and medium level work activities;   (2) Thompson's subjective complaints of pain are not consistent with the results of objective medical testing and diagnostic imaging; (3) Thompson's functional capacity examination was "characterized by inconsistencies and submaximal effort"; (4) the surveillance video substantially undermines Thompson's claims of disabling pain; (5) one of Thompson's treating physicians – Dr. Ahn – concluded that she was not disabled; and (6) another consulting physician who reviewed Thompson's records – Dr. Parisi – shares the view that Thompson overstates her pain and is not disabled.  Admin. Rec. at 186–89.

Based upon all of the evidence contained in Thompson's medical records, and in light of the opinions issued by several doctors (both examining and consulting), Liberty concluded that, although Thompson "may continue to experience some symptoms, the

11

medical information contained in her file does not support
complications or restrictions or limitations severe enough to
prevent her from performing the material and substantial duties
of her own occupation."  Admin. Rec. at 181.  Accordingly,
Liberty concluded that Thompson was not "disabled," as that term
is defined in her former employer's long-term disability plan.

III. Liberty's Determination was not "Arbitrary or Capricious"

    If this were a breach of contract case, in which Thompson
sued her insurance company for disability benefits, the outcome
might be different.  There is, after all, substantial evidence in
her medical records (including the opinions of two treating
physicians) supportive of the view that Thompson is disabled.

    But, because this case is governed by ERISA, what would
otherwise be an insurance coverage or breach of contract case is,
instead, one governed by principles of trust law.  Liberty's
adverse benefits eligibility determination is subject to a far
more deferential standard of review.  And, because there is also
substantial evidence in the record supportive of the view that
Thompson's complaints of disabling pain are overstated and that
she is, in fact, capable (albeit with some occasional discomfort)

12

of performing the modest exertional demands of her prior work as
a bank teller, the court cannot disturb Liberty's decision.

Although Thompson asserts that Liberty accorded too little
weight to the opinions of her treating physicians and gave too
much credence to the opinions of the non-examining physicians and
the brief surveillance video, the law is well-established that
Liberty was entitled to rely on such evidence.  See Black &
Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("Plan
administrators, of course, may not arbitrarily refuse to credit a
claimant's reliable evidence, including the opinions of a
treating physician.  But, we hold, courts have no warrant to
require administrators automatically to accord special weight to
the opinions of a claimant's physician; nor may courts impose on
plan administrators a discrete burden of explanation when they
credit reliable evidence that conflicts with a treating
physician's evaluation.").  See also Denmark, 481 F.3d at 34-35
(holding that the plan administrator was entitled to rely upon
the opinions of a nurse as well as non-examining physicians, over
the opinions of the plaintiff's treating physicians, and that it
could rely on surveillance evidence in reaching its decision).

**Conclusion**

Given the applicable standard of review, which affords
substantial deference to Liberty's adverse benefits eligibility
determination, the conclusion that the record supports Liberty's
decision is unavoidable.  While the court obviously has no way of
knowing the precise extent of Thompson's disc disease or the
level of pain it causes her, the record does contain substantial
evidence supporting her claim of total disability by virtue of
the pain she experiences.  Importantly, however, the record also
contains substantial evidence supporting Liberty's determination
that, while Thompson has certainly experienced some disc
degeneration and suffers from periodic flare-ups of discomfort,
that condition has not rendered her disabled.

To its credit, Liberty appears to have fully and carefully
reviewed Thompson's medical history and thoroughly investigated
her claims.  Whether its decision was "correct" or whether this
court might have ruled differently on Thompson's application for
disability benefits are not questions before the court.  Rather,
the issue presented is whether, in light of the entire record,
Liberty's decision was arbitrary and capricious.  That Liberty
chose to credit the opinions of Dr. Ahn, Mr. Roy, Dr. Parisi, and
Dr. Bomar (and to give some weight to the findings of its private

14

investigator) over the opinions of Dr. Thompson and Dr. Rock (and, earlier in Thompson's treatment, Dr. Miller) cannot be said to have been arbitrary or capricious.  As the court of appeals has repeatedly pointed out, when there is substantial evidence supportive of both the claimant and the plan administrator, the district court cannot overturn the plan administrator's decision as arbitrary and capricious.  Such is the case here.

For the foregoing reasons, as well as those set forth in Liberty's memorandum, Liberty's motion for judgment on the administrative record (document no. 21) is granted, and Thompson's motion (document no. 18) is denied.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 24, 2007

cc:  William D. Woodbury, Esq.
     William D. Pandolph, Esq.

15